**In Re: Appeal of David H. Young and Bonnie L. Young, his wife, from the Decision of the Board of Assessment, Appeals of Lawrence County.**

**Appeal of: Board of Assessment, Appeals of Lawrence County.**

Commonwealth Court of Pennsylvania.

Argued Oct. 16, 2006.
Decided Nov. 20, 2006.

---

Frank G. Verterano, New Castle, for appellant.

Richard E. Flannery, New Castle, for appellees.

BEFORE: McGINLEY, Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge.

OPINION BY Judge FRIEDMAN.

The Board of Assessment Appeals of Lawrence County (Board) appeals from the October 11, 2005, order of the Court of Common Pleas of Lawrence County (trial court), which reversed the Board's decision reassessing a parcel of land owned by David H. Young and Bonnie L. Young (Landowners). We affirm.

The case was submitted to the trial court on the following stipulated facts. (*See* R.R. at 41a–54a.) Landowners own and reside on a parcel of land located in Little Beaver Township, Lawrence County, with the permanent identification number (ID number) 23–043800. In 1997, Landowners leased a 2,500 square foot area of their property to a telecommunications provider, which constructed a self-supporting, 220–foot tall cellular tower on the leased portion in 1999.[1]

In 2002, Lawrence County performed at countywide reassessment (2002 reassessment) and set the value of Landowners' entire property at $107,600, effective January 1, 2003.[2]

On January 5, 2005, the Lawrence County Assessment Office (Assessment Office) notified Landowners that, without survey or subdivision, it was setting aside one acre of Landowners' property, on part of which the cellular tower was located, and valuing that parcel at $89,200 based upon an arbitrary monthly lease income of $1,000 (January Notice). The January Notice identified the one-acre set-aside with the same ID number (23–043800) as Landowners' entire property. The January Notice also informed Landowners that they could present information concerning the actual amount of the lease income and that the reassessment would be altered accordingly.[3] (See R.R. at 8a.)

On February 11, 2005, the Assessment Office notified Landowners that it was revising the value of the one-acre set-aside from $89,200 to $71,300 (February Notice). The February Notice continued to identify Landowners' property and the one-acre set-aside with the original ID number of 23–043800. Landowners appealed the separate assessment of the one-acre parcel to the Board, arguing that it was unlawful. In the notice of the appeal hearing received by Landowners, the Board assigned a new ID number, 23–043801,[4] to the one-acre set-aside. On April 1, 2005, following a hearing, the Board denied Landowners' appeal and set a "revised assessment value" of $71,400 for the one-acre parcel.[5]

Landowners appealed the Board's decision to the trial court, arguing that the Board erred in upholding the assessment of the one-acre set-aside. At a hearing on the matter, Landowners contended that this was an unlawful spot reassessment,[6]

1. Landowners leased the area to a telecommunications provider for a period of five years with four five-year options. Although the leased area is 2,500 square feet, the cellular tower sits on three four-to-six-foot square concrete pads within a 700–square foot area and is fenced off.

2. An assessment officer visited Landowners' property in connection with the 2002 reassessment on February 7, 2001.

3. Prior to setting aside and reassessing the one-acre parcel, the Assessment Office separately assessed the cellular tower owner for the value of the cellular tower located on the one-acre parcel.

4. The notice of appeal indicated that the new ID number was 23–048301; however, this apparent typo was corrected in the Board's April 1, 2005, decision; the correct ID number was 23–043801.

5. The "revised assessment value" was calculated using the income approach, which used the annual income to Landowners of $10,400,

an expense rate of twenty-five percent and a capitalization rate of 10.087 percent.

6. A spot reassessment is the reassessment of a property or properties that is not conducted as part of a countywide revised assessment and which creates, sustains or increases disproportionality among properties' assessed values. Section 1.1 of The Second Class A and Third Class County Assessment Law, Act of June 26, 1931, P.L. 1379, added by section 1 of the Act of December 13, 1982, P.L. 1165, as amended, 72 P.S. § 5342.1; see Groner v. Monroe County Board of Assessment Appeals, 569 Pa. 394, 803 A.2d 1270 (2002) (holding that the definitions in 72 P.S. § 5342.1 apply to all counties under section 104 of The General County Assessment Law, Act of May 22, 1933, P.L. 853, as amended, 72 P.S. § 5020–104).

Although the Assessment Law does not expressly prohibit the Board from engaging in spot reassessment, cf. § 7.1 of The Second Class A and Third Class County Assessment Law, added by section 2 of the Act of July 19, 1991, P.L. 91, as amended, 72 P.S. § 5348.1, the Assessment Law provides specific circum-

asserting that: (1) their property, including the land on which the cellular tower is located, was reassessed in 2002 and there had been no subsequent countywide reassessment; and (2) none of the statutory circumstances for reassessment set forth in section 602.1 of The Fourth to Eighth Class County Assessment Law (Assessment Law), Act of May 21, 1943, P.L. 571, added by section 2 of the Act of January 18, 1952, P.L. (1951) 2138, *as amended*, 72 P.S. § 5453.602a, applies. The Board responded that it properly added the one-acre parcel to the assessment rolls and assessed it appropriately based on this court's decision in *Shenandoah Mobile Company v. Dauphin County Board of Assessment Appeals*, 869 A.2d 562 (Pa. Cmwlth.2005), in which we held that cellular towers are real estate subject to taxation.

■ After considering the stipulated facts, the trial court concluded that *Shenandoah* was distinguishable. The trial court reasoned that, unlike the situation in *Shenandoah*, the Board here was not adding the actual cellular tower to the assessment rolls as new real estate, nor was the Board taxing the cellular tower's owner; rather, the Board took parcels of existing assessed property, assigned a new identifi-

cation number to the one-acre set-aside and assessed this "new property" separately from the originally assessed property. (Trial court op. at 4.) The trial court also agreed with Landowners that none of the statutory exceptions outlined in section 602.1 of the Assessment Law applied. *Id.* Accordingly, the trial court concluded that the Board's action constituted an unlawful spot reassessment and reversed the Board's decision. The Board now appeals to this court.[7]

■ It is generally acknowledged that, once a value has been established for a taxable property, that value cannot be changed absent one of the following circumstances: (1) undertaking of a countywide reassessment; (2) appeal of property assessment by either the landowner pursuant to section 701 of the Assessment Law, 72 P.S. § 5453.701, or by the taxing authority under section 706 of the Assessment Law, 72 P.S. § 5453.706; (3) need for a downward adjustment is necessary under section 703.3 of the Assessment Law,[8] added by section 2 of the Act of September 28, 1965, P.L. 550, *as amended*, 72 P.S. § 5453.703c; (4) need to correct a mathematical or clerical error, *see Callas v. Armstrong* County Board of Assessment,[9]

---

stances when a Board *may* reassess property, and various cases have held that spot reassessment is not in accordance with the Assessment Law. *See, e.g., Groner; Althouse v. County of Monroe*, 159 Pa.Cmwlth. 467, 633 A.2d 1267 (1993), *appeal denied*, 540 Pa. 623, 657 A.2d 493 (1995); *O'Merle v. Monroe County Board of Assessment*, 95 Pa.Cmwlth. 141, 504 A.2d 975 (1986).

7. Our scope of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion or committed an error of law and whether its decision is supported by substantial evidence. *Shenandoah.*

8. This section provides:

Whenever through mathematical or clerical error an assessment is made more than it should have been, and taxes are paid on such incorrect assessment, the board, upon discovery of such error and correction of the assessment shall so inform the appropriate taxing district or districts, which shall make a refund to the taxpayer or taxpayers for a period not in excess of six years from the date of application for refund or discovery of such error by the board.

72 P.S. § 5453.703c.

9. In *Callas v. Armstrong County Board of Assessment*, 70 Pa.Cmwlth. 272, 453 A.2d 25 (1982), we held that taxing authorities were permitted to correct clerical or mathematical errors even though the Assessment Law does

70 Pa.Cmwlth. 272, 453 A.2d 25 (1982); or (5) presence of one of the three conditions outlined in section 602.1 of the Assessment Law, 72 P.S. § 5453.602a. *Althouse v. County of Monroe*, 159 Pa.Cmwlth. 467, 633 A.2d 1267 (1993), *appeal denied*, 540 Pa. 623, 657 A.2d 493 (1995). When none of these circumstances exists, a taxing authority's reassessment of property constitutes an impermissible spot reassessment. *Id.*

■ There is no dispute that none of the first four circumstances allowing the Board to reassess Landowners' property applies here. Thus, the Board's reassessment of the one-acre set-aside is valid only if one of the three conditions of section 602.1 of the Assessment Law is present. Section 602.1 of the Assessment Law provides:

> *The board may change the assessed valuation on real property when* (i) a parcel of land is divided and conveyed away in smaller parcels, or (ii) when the economy of the county or any portion thereof has depreciated or appreciated to such extent that real estate values generally in that area are affected, and (iii) *when improvements are made to real property or existing improvements are removed from real property or are destroyed.*

72 P.S. § 5453.602a (emphasis added). When a change in an assessment is based on improvements made to real property, the change must come when the improvements are made and not at an arbitrary time in the future. *Shenandoah; Radecke v. York County Board of Assessment Appeals*, 798 A.2d 265 (Pa.Cmwlth.2002).

The Board claims that authority for its 2005 reassessment of the one-acre parcel is provided by the third condition of section 602.1 of the Assessment Law. Specifically, the Board asserts that as a result of this court's recent decision in *Shenandoah*, the cellular tower on Landowners' property is now identified as realty, not personalty, and constitutes an improvement to the property warranting a reassessment of the one-acre parcel.[10] Essentially, the Board argues that because the cellular tower did not constitute such an improvement until the law changed in 2005, 2005 must be considered the date when the improvements were made.[11] We disagree.

---

not contain a specific provision allowing for such corrections.

**10.** The Board also relies on this court's decision in *Atlantic City Electric Company v. United School District*, 780 A.2d 766 (Pa.Cmwlth. 2001), *appeal denied*, 572 Pa. 759, 818 A.2d 505 (2003). In *Atlantic City Electric Company*, we permitted a local taxing authority to add a formerly exempt property to the tax rolls in the same year that the exemption was statutorily abolished, stating that to do so was not arbitrary or capricious. The Board argues that in reassessing the one-acre parcels based on *Shenandoah*, it, like the taxing authority in *Atlantic City Electric Company*, was merely reacting to a change in the law in a timely fashion and that such a reaction was neither arbitrary nor capricious. Although both the Board here and the board in *Atlantic City Electric Company* relied upon a change in the law to support reassessment, the change

in the *Atlantic City Electric Company* case resulted in a *previously unassessed property* becoming eligible for assessment and placement on the tax rolls after the yearly assessment had already taken place. As a result of the abolishment of the statutory exemption, the taxing authority in *Atlantic City Electric Company* could add the equivalent of a new property to its tax rolls and *make an initial assessment* for local real estate tax purposes. This is not the case here. There is no question that Landowners' property previously was subject to assessment and was, in fact, assessed during the countywide assessment. Therefore, the Board's reliance on *Atlantic City Electric Company* is misplaced.

**11.** We find this argument particularly disingenuous in view of the fact that *Shenandoah* was decided almost a month *after* Landowners received the initial reassessment letter on January 5, 2005.

In *Shenandoah*, the county performed a countywide reassessment of all real property, but it did not include any cellular towers in the assessment because the county did not deem the towers to be proper subjects of assessment for real estate tax purposes. Subsequently, based upon a different interpretation of law, the local assessment office identified all cellular or wireless towers in the county and assessed the value of the towers and supporting pads as improvements to real estate. *Id.* The local assessment office then sent out notices of the change in assessment to the owners of the cellular towers, including Shenandoah. Shenandoah appealed the assessment notice to the Board, which concluded that the cellular towers were properly assessed as improvements to real estate and denied Shenandoah's appeal. The trial court affirmed, rejecting Shenandoah's arguments that its cellular tower was not real estate and that the assessment was an unlawful spot reassessment. On further appeal, this court agreed, holding that the cellular towers were not personalty but taxable realty.[12] Further, we held that the assessment of the cellular towers was not an impermissible spot reassessment, reasoning that, because the cellular towers were a new subject of taxation, this was an initial assessment rather than a reassessment.

■ We agree with Landowners and the trial court that *Shenandoah* does not control here.[13] Under *Shenandoah*, a cellular tower is considered an improvement to real property; therefore, the cellular tower on Landowners' property constitutes an improvement which *could* authorize a reassessment pursuant to section 602.1 of the Assessment Law, 72 P.S. § 5453.602a. However, a review of the record reveals that, in its adjudication, the Board did *not* find that any "improvements" were made to the one-acre parcel that would increase its value. To the contrary, in its April 1, 2005, decision, the Board indicates that *the value of the land*, i.e., the one-acre parcel, was $71,400; the Board **placed no value on any improvements made to Landowners' one-acre parcel.** (R.R. at 10a.) We question how the Board can argue on appeal that its 2005 reassessment of the one-acre parcels was based upon improvements when the Board found that no improvements were made to the one-acre parcel or, alternatively, that the improvements made to Landowners' one-acre parcel had no value. (*See* R.R. at 10a.)

Furthermore, to the extent that the construction of the cellular tower could be deemed an improvement to the one-acre

---

12. In making this determination, we applied the analysis set forth in *In re Sheetz, Inc.*, 657 A.2d 1011 (Pa.Cmwlth.), *appeal denied*, 542 Pa. 653, 666 A.2d 1060 (1995). Similarly, Landowners challenge the Board's use of *Sheetz* to support its conclusion that cellular towers and the land on which they are situated are taxable entities. Landowners argue that *Sheetz* had nothing to do with cellular towers; instead, the question there was whether the canopies that covered gas pumps at a gas station were personalty or realty.

13. As Landowners and the trial court point out, *Shenandoah* is easily distinguishable from the present case. In particular, (1) *Shenandoah* dealt with the taxation of the cellular towers themselves and not the property on which the towers were located; (2) the board in *Shenandoah* taxed the owners of the cellular towers and not the owners of the underlying property; (3) the court's determination that the board's action in *Shenandoah* did not constitute a spot reassessment was based on the fact that the cellular towers were *new subjects of taxation*, and, as such, the assessment was an *initial assessment, not a reassessment.* The situation here is markedly different where Landowners' one-acre parcel, when reassessed in 2005, was not a new subject of taxation but, in fact, was previously assessed during the 2002 reassessment as a part of Landowners' entire property.

parcel on which a reassessment could be based, we disagree with the Board's contention that the improvement occurred in 2005. Instead, we agree with Landowners that this improvement occurred in 1997, when Landowners entered into the lease with the telecommunications provider or in 1999, when the cellular tower was constructed. As stated previously, when a change in an assessment is made based on a property owner improving the real property, *the changes in the assessment must come when the improvements are made* and not at an arbitrary time in the future. *Shenandoah; Radecke.* Prior to 2005, the Board: (1) knew of the lease agreement to use the one-acre parcel for a cellular tower; (2) knew that a portion of Landowners' property had become income-producing property; (3) reassessed Landowners' property, *including the leased portion with the cellular tower on it,* during the 2002 countywide reassessment; and (4) ultimately based its 2005 reassessment and valuation of the one-acre parcel on the value of the lease agreement.

Thus, we agree with Landowners that this case is more akin to *Radecke,* in which this court held that the *failure to properly appraise a property in a countywide reassessment by not accounting for improvements made to the property* was *not* a clerical or mathematical error and would not support the assessor's office reassessment of the improved property. Since the

countywide reassessment in 2002, there have been no improvements to the property which would support the Board's reassessment in 2005.

Therefore, because this was not an initial assessment but, rather, a reassessment of Landowners' property that did not occur as a result of a countywide reassessment and the value was not changed when the improvement was made to Landowners' property, the trial court properly determined that the Board's 2005 reassessment of Landowners' one-acre parcel constitutes an impermissible spot reassessment.

Accordingly, we affirm.[14]

### ORDER

AND NOW, this 20th day of November, 2006, the October 11, 2005, order of the Court of Common Pleas of Lawrence County is hereby affirmed.

---

**14.** We also question the Board's actions in unilaterally "subdividing" or "partitioning" Landowners' property by assigning a new ID number to the one-acre parcel and adding this "new property" to the tax roll where Landowners neither conveyed the one-acre parcel to anyone nor applied to subdivide their property. In footnote 3 of *Shenandoah,* we responded to Shenandoah's argument that to allow a board of assessment *to arbitrarily add property to the tax rolls by assigning "new" and separate tax parcel numbers would render the prohibition against spot reassess-* *ments meaningless,* by stating, "[w]e might agree if the record showed that the Board improperly deemed reassessments to be new assessments; however, the record does not so indicate here." *Shenandoah,* 869 A.2d at 566 n. 3 (emphasis added). Here, the record does indicate such an improper action by the Board. The Board assigned a new and separate ID number to the previously assessed one-acre parcel without Landowners' subdivision or conveyance of that one-acre, essentially adding "new property" to the tax rolls.